FULLER & RICE LUMBER & MANUFACTURING CO. *v.* HOUSEMAN.

1. CONTRACTS—CONSTRUCTION—EVIDENCE.

Plaintiff, a dealer in lumber, having agreed to furnish to one S. material for houses to be erected upon lots purchased from defendant, wrote the latter as follows: "We have taken an order from S. for two house bills, * * * upon the understanding that he is to give us an order on you for the amount of our bill. * * * H. [a son of defendant] told us you would treat these two houses in the same way you have D.'s, and protect our interest in the same way.   If same is not correct, kindly advise us."   Defendant made no reply to this letter.   It appeared that buildings had been erected for D. on lots purchased from defendant a short time before, and that defendant had cashed the orders drawn by D. in favor of plaintiff; but it did not appear that the payments were in pursuance of any arrangement made by the parties before the lumber was purchased by D., or that they were not made out of D.'s money.   *Held*, that, even if defendant's failure to respond to the letter should be construed as an assent to its terms, he could only be held liable thereunder "in the same way" as he had been liable in D.'s transaction, which was not shown to have been a liability to pay out of his own funds.

2. SAME — PROMISE TO PAY DEBT OF ANOTHER — STATUTE OF FRAUDS.

    Where goods are furnished and credit given to one person under the understanding that he shall pay for the same in orders upon another person, the latter cannot be held for the purchase price because of his verbal promise, made when the orders are presented, that he will pay them in a few days, since a contract to answer for another's debt is one required by 2 How. Stat. § 6185, subd. 2, to be in writing.

Error to Kent; Adsit, J. Submitted June 11, 1897. Decided September 14, 1897.

*Assumpsit* by the Fuller & Rice Lumber & Manufacturing Company against Joseph Houseman and another for goods sold and delivered. From a judgment for plaintiff, defendants bring error. Reversed.

*L. G. Rutherford,* for appellants.

*Sweet, Perkins & Judkins,* for appellee.

LONG, C. J. The defendants were the owners of several lots upon Houseman's Fair Ground addition to Grand Rapids. In February, 1895, they contracted with Schuiling & Kuipers to sell them two lots for $1,000 each, and agreed to furnish them $1,000 for each lot, to erect buildings thereon to cost about $1,800 each. In attempting to carry out this agreement on the part of Schuiling & Kuipers, Mr. Schuiling met one Mr. Torrey, agent of the plaintiff, and gave him figures for the bills of lumber for the two houses; and on February 28, 1895, the plaintiff made the following proposition:

"Messrs. SCHUILING & KUIPERS, City.

    "*Gentlemen:* Confirming conversation with Mr. Schuiling at the Morton House yesterday, we agree to furnish you the following items, the list comprising rough lumber for one house. [Items omitted.] According to talk, we furnish the two houses going on the Fair Ground addition, and when we have delivered the above material, and same is satisfactory to you, as being what you bought, you are

to give us an order on Joseph Houseman for the amount of our invoice, on the basis of $725, net cash, for three house bills like the one mentioned in the letter. You are then to advise us about the third house, to be built on Terrace avenue. Everything not included in this list is to be considered as an extra. Thanking you for the order, we remain,

"Yours respectfully,
"FULLER & RICE L. & MANFG. CO."

This letter was received by Schuiling & Kuipers, and the lumber furnished. Plaintiff claims that on the same day Mr. Torrey, its agent, mailed the following letter:

"February 28, 1895.

"JOSEPH HOUSEMAN, Esq., City.

"*Dear Sir:* We have taken an order from Messrs. Schuiling & Kuipers for two house bills to be erected on your Fair Ground addition, upon the understanding that they are to give us an order on you for the amount of our bill. Our invoice will amount to about $475. The extras may bring it up a little higher. Henry Houseman told us you would treat these two houses in the same way you have Durkee's, and protect our interest in the same way. If same is not correct, kindly advise us.

"Yours respectfully,
"FULLER & RICE L. & MANFG. CO.,
"Torrey."

Mr. Torrey testified that he wrote the letter for the plaintiff, took a letterpress copy of it, and then mailed the letter to the residence of Joseph Houseman, at No. 229 East Fulton street, Grand Rapids, postage prepaid. The court permitted the plaintiff to show by Mr. Torrey that, after these orders were taken, he presented them to Mr. Houseman; that, when he took the orders to him, Houseman took a memorandum of them on the fly leaf in the back of his book, and said: "I will have to go out and see;" when Mr. Torrey said: "I will come in in a few days, and get the money;" and Houseman replied: "All right; I will pay them in a few days."

The witness was permitted to testify in regard to the Durkee matter. It appeared that Durkee had been build-

ing some houses for defendants, and getting lumber from the plaintiff; and the witness testified:

"He [Durkee] would give me orders to the amount of the invoices of lumber delivered at different houses, and I would take these orders to Mr. Houseman. He would get the same book I have spoken of before, and enter the amount of the orders on the fly leaf. Then it was the custom for him to have 10 days, at which time he would give me a check for the amount."

These buildings were being erected by Durkee about the same time that Schuiling & Kuipers were erecting theirs, or a little before that. Mr. Houseman testified that he never received this letter, and that the first he ever knew that this lumber was being furnished by the plaintiff was when the orders of Schuiling & Kuipers were presented to him; that, when presented, he looked at the books, and told Mr. Torrey there was nothing coming to Schuiling & Kuipers, and stated that he would not pay unless there was money coming to them, and that there never was any. He further testified that he had advanced to Schuiling & Kuipers some considerable money, when they failed, and he was compelled to go on and finish the contract, which he did, paying out, including what he paid Schuiling & Kuipers, something over $1,000 on each house. Mr. Schuiling testified that when they failed there was nothing coming to them on the estimates. It also appeared, without contradiction, that the lumber was charged upon plaintiff's books to Schuiling & Kuipers, and not to the defendants.

Defendants' counsel asked the court to direct the verdict in favor of defendants. This was refused, and the court charged the jury, substantially, that, in order to entitle the plaintiff to recover, they must find that plaintiff sold and delivered the lumber on the credit and promise of the defendants to pay therefor prior to the delivery of such lumber, or of some part of it; that, if the sale and delivery were made to Schuiling & Kuipers without the knowledge or promise of the defendants, the plaintiff could not

recover; that the mere belief on the part of the plaintiff that defendants would become responsible for it, when in fact they knew nothing about it until long after the sale and delivery, would not render the defendants liable,—that there would be no contract in such case; that there must have been what is known in law as an original agreement or undertaking between the parties in order to render the defendants liable, which means, in short, that the plaintiff parted with the lumber relying on the promise of the defendants to pay therefor; that, if the sale was made direct to Schuiling & Kuipers on their promise to pay therefor in any manner, either in cash or in orders on defendants, then any promise thereafter made by the defendants not in writing was void, and did not make them liable in this case. Again the court charged:

"The fact, if you find it to be a fact, that said letter was written by plaintiff, inclosed in an envelope, with a return card thereon, and was addressed to Joseph Houseman at his residence in this city, and deposited in the post office, is *prima facie* evidence that he received said letter, and became acquainted with its contents; and if you find that Houseman did receive said letter, and did not respond thereto, as requested, and that, by an arrangement and agreement between plaintiff and defendants in reference to said Durkee matter, said defendants were to become responsible for and pay for the lumber furnished to said Durkee, then said defendants are liable to the plaintiff for the amount of lumber furnished to Schuiling & Kuipers for which this action is brought, if defendants knew the fact that the lumber was being furnished under this alleged agreement. * * * Now, what is meant to be understood by these instructions * * * is that if you find, as a matter of fact, Mr. Houseman received that letter, and that he knew that the plaintiff was relying upon that proposition, assuming that his silence was an assent to it, he would be estopped now from denying it, and would be liable under an original promise, as an original promise. Mr. Houseman must have assented to the proposition in the letter in some manner which would bind him. * * * He must have done something by which the plaintiff had a right to rely upon his assent to that proposition. Subsequent acts and conversations are material only as

bearing upon the alleged knowledge and assent of the defendants to the proposition made in the letter before the lumber was delivered. That is why those subsequent conversations and acts of the parties have been admitted in evidence, not to prove an original agreement. * * * Subsequent promises to pay the plaintiff for the lumber may be considered by you as bearing upon the probability of the original agreement having been made."

The jury returned a verdict in favor of plaintiff for the amount of the orders drawn on defendants, and the interest thereon.

We think the court should have directed the verdict in favor of defendants. There is no showing upon this record that in the Durkee case any correspondence ever passed between the plaintiff and defendants by which any agreement was made by defendants to pay for the lumber purchased by Durkee. All that can be said of that matter is that lumber was furnished by plaintiff to Durkee, for which Mr. Houseman afterwards paid; but there is no showing that he was legally liable for the lumber purchased by Durkee, or that any arrangement was ever made between the parties, before the lumber was furnished, that defendants should pay for it. All that is claimed is that, after the lumber was furnished to Durkee, the plaintiff would go to Mr. Houseman with orders drawn on him by Durkee, and Mr. Houseman would enter the amount on a fly leaf of his book, and afterwards make the payments. There is no showing but that, at the time these payments were made, defendants were indebted to Durkee, and were making payments out of Durkee's money. In the case in suit it appears conclusively that defendants were not indebted to Schuiling & Kuipers in any sum whatever.

But counsel contend that, inasmuch as the Durkee matter was spoken of in the letter written by Mr. Torrey to Mr. Houseman under date of February 28, 1895, it was proper to show what the Durkee arrangement was. The statement in the letter is that "Henry Houseman told us you would treat these two houses in the same way you

have Durkee's, and protect our interest in the same way." The way the Durkee matter was treated was, so far as shown here, that Houseman paid on the Durkee orders. It is not shown, however, but that these payments were made out of money then presently owing to Durkee. When the present orders were presented, no money was owing to Schuiling & Kuipers; so that the court was at least in error in permitting the plaintiff to put the Durkee matter into the case. It was all admitted under proper objection. Being in, the court, in its general charge, said to the jury that plaintiff claimed that there was an understanding and agreement between the plaintiff and defendants that defendants were to pay plaintiff for the lumber furnished to Durkee upon orders to be drawn by Durkee, and that defendants had promptly paid all such orders. Aside from the evidence already quoted bearing upon the subject, it also appears that, upon the cross-examination of Mr. Torrey, he was asked:

"*Q.* What did you furnish to Mr. Durkee?
"*A:* The same building material for houses.
"*Q.* And under the same conditions?
"*A.* Yes, sir."

The record states that "the above is all the testimony in the case bearing upon the question raised."

With the Durkee matter eliminated, we may now inquire what there was in the case which warranted the charge of the court, and the verdict and judgment. The letter of February 28, 1895, and failure to answer it, must constitute the whole claim of plaintiff in the case. Admitting that the letter was received by Mr. Houseman, would his failure to answer it estop him and the other defendant from setting up the defense now made? The burden of proof is upon the plaintiff to establish its claim. The gist of the letter is that plaintiff was about to furnish Schuiling & Kuipers lumber to erect two buildings upon the defendants' Fair Ground addition, and Schuiling & Kuipers were to give an order in plaintiff's favor upon Mr. Houseman for the amount, and that one Henry House-

man had told plaintiff that the defendants would treat these two houses in the same way they had Durkee's, and protect plaintiff's interest in the same way.   Mr. Houseman is asked in the letter if that is correct.   The way the Durkee matter was treated we have already stated.   When the orders were drawn by Schuiling & Kuipers upon Houseman, he, it appears without contradiction, had no money in his hands belonging to Schuiling & Kuipers, and refused to pay the orders.   Under the circumstances, are the defendants bound to pay money out of their own funds?   There is no proof of any such agreement, even if we construe Houseman's silence as an agreement to treat it as he did the Durkee matter.   We are unable to find from the record any agreement which may be treated as an original undertaking by Mr. Houseman to pay for this lumber.   Neither is there anything which would warrant our treating the case as one in which there is a promise to pay the debt of Schuiling & Kuipers, as there was no written agreement to that effect, as provided by subdivision 2, § 6185, 2 How. Stat.   See, also, *Studley* v. *Barth*, 54 Mich. 6.   The court should have directed a verdict in favor of defendants.

The judgment is reversed, and new trial ordered.

GRANT, MONTGOMERY, and MOORE, JJ., concurred. HOOKER, J., did not sit.